## Dalsen's Estate

The facts appear from the adjudication and supplemental adjudication of

HENDERSON, J., Auditing Judge.—Charles W. Dalsen died February 2, 1930, leaving a will duly probated. Proof of advertisement of grant of letters is hereto annexed.

By his will he gave to the accountant $300 in trust for the care of his burial lot, and the residue of his estate in trust to pay over the net income to his wife, Laura V. Dalsen, for and during the term of her natural life with power in the trustee to use and expend the net income for her support should she become incapacitated, and upon the death of his said wife, to pay over the net income to his sister Helena A. Bachman for life, and upon the death of the survivor to pay over the principal one-quarter each to his nephews and nieces, Charles R. Bachman, Beatrice Bachman, Robert Russel Bachman and Mary D. Staman.

Laura V. Dalsen, decedent's widow, is a person of weak mind, and the Continental-Equitable Title and Trust Company is her guardian.

By decree of Court of Common Pleas No. 5, dated September 22, 1930, the guardian was authorized, on behalf of the widow, to elect to take against the will.

On May 27, 1931, a petition filed by the Manayunk Trust Company for the revocation of the above decree was dismissed by Court of Common Pleas No. 5.

By writing dated October 7, 1930, the Continental-Equitable Title and Trust Company, guardian, elected on behalf of the widow to take against the will.

The claim of the guardian of the widow to take against the will is opposed because, regular in every other respect, it was not delivered (a copy was) to the executor and recorded by it and by it filed in the office of the clerk of the orphans' court. The facts are fully set out in the record. This question was ruled in Kester's Estate, 23 Luzerne Legal Reg. 82, and in Smith's Estate, 16 Del. Co. Reps. 186.

The Supreme Court has said this act is highly mandatory: Beck's Estate, 265 Pa. 51, McCutcheon's Estate, 283 Pa. 157, Minnich's Estate, 288 Pa. 354, and Wilson's Estate, 297 Pa. 348.

This is a hard case, the widow is non compos mentis and the question is, should this clause of the act be also treated as "highly mandatory?" Is there a purpose to be subserved in requiring the election to be delivered to the executor and by him duly recorded and filed? I am of opinion there is—the purpose of the act is certainly in the title of real (and there is such here) and personal estate and the prompt and orderly settlement of decedents' estates. The executor has the duty of examining the election, and if it be infirm for any reason, he can at once move to have it declared void. Without this provision an alleged surviving spouse, say of the common-law variety, could put a spurious election of record and greatly hamper the orderly and prompt administration of estates. The interest of the Commonwealth in this matter far exceeds the unfortunate plight of this widow. The claim of the Continental-Equitable Title and Trust Company, guardian, is dismissed.

### Supplemental adjudication

After my adjudication in this estate was filed on May 25, 1931, exceptions were duly filed and later continued by the court in banc. Thereafter, upon petition, answer, replication and proofs, I granted a rehearing to enable the guardian for the widow to place further facts upon the record in support of her claim to take against the will. By reason of the exceptions filed, the matter was within my grasp to permit such rehearing. See Linton's Estate, 24 Dist. R. 49, and Conner's Estate, 21 Dist. R. 107.

In addition to the facts proven at the original hearing, it is now shown that when this account was first called for audit a continuance was granted so that the executor could institute proceedings in Common Pleas No. 5 to vacate its decree directing the guardian of the weak-minded widow to take against the will; that proceeding was prosecuted and failed. There was some dispute as to whether all the parties in interest knew of the election or defective election on behalf of the widow. Mr. Donoghue stated that by showing the knowledge of the executor and its counsel he hoped to bring this case within the facts of Swartz's Estate, 72 Pa. Superior Ct. 143.

Knowledge by the executor and its counsel does not make a compliance with the mandatory provision of this act. I repeat what I said in my adjudication, that this election, although regular in every other respect, was not, as required by the act, delivered to the executor and by it recorded in the office of the recorder of deeds and filed with the clerk of the orphans' court.

Mr. Donoghue argues that they were within the year when the account was originally called for audit, and had they known of the infirmity they could then have delivered the original election to the executor in keeping with the

provisions of the act. His client knew the time was running and the proceedings in the court of common pleas would afford no excuse.

This question arises under section 23 (b) of the Wills Act of 1917, providing as follows:

"A surviving spouse electing to take under or against the will of the decedent shall, in all cases [except where such surviving spouse is the sole legatee the beneficiary under the will—Act of 1929], manifest the election by a writing signed by him or her, duly acknowledged before an officer authorized by law to take the acknowledgment of deeds, and delivered to the executor or administrator of the estate of such decedent, within [one year—Act of 1925] after the issuance of letters testamentary or of administration. Neglect or refusal or failure to deliver such writing within said period shall be deemed an election to take under the will."

The amendments of April 2, 1925, P. L. 117, and April 24, 1929, P. L. 648, contain the same provision, "and delivered to the executor or administrator of the estate of such decedent within one year after the issuance of letters testamentary or of administration."

It should be observed that these three acts not only direct that the election shall be "delivered to the executor," and section (e) directs him to record it, but the final clause is even more mandatory in terms, "neglect or refusal or failure to deliver such writing . . . shall be deemed an election to take under the will." This clause is new and is not found in the Act of April 21, 1911, P. L. 79, from which this act is derived.

I will now consider the argument for the widow that the knowledge of the executor and its counsel of the election should be accepted in lieu of the delivery as provided in the act, but this overlooks the mandatory provision that neglect to deliver "shall be deemed an election to take under the will."

Swartz's Estate, 72 Pa. Superior Ct. 143, has been cited in support of the widow's position. This arose under the Act of April 21, 1911, P. L. 79, section 1 of which provides as follows:

"That surviving husbands or wives electing to take under or against the wills of decedents shall, in all cases, manifest their election by a writing signed by them, duly acknowledged by them before an officer authorized by law to take the acknowledgment of deeds, and delivered to the executor or administrator of the estate of such decedent," which did not contain the new clause as pointed out above.

In this case the auditor found there was no actual delivery of the election. In reversing, the Superior Court found there had been a delivery, saying:

"We cannot agree with the auditor's conclusion of fact. The written paper was in due form—it was exhibited to the executor. Its purpose being unmistakenly declared, the executor knew its contents and the effect it was intended to have. He made no objection or protest; the paper was placed on record almost in his very presence without objection. His standing mute under such circumstances cannot nullify the effect of a delivery of the paper to him. When the attorney stated 'it would have to be recorded and he would take it over to the recorder's office' and the executor made no objection, all rules of common sense and fair dealing would necessarily imply that, without objection on the part of the executor, the act of the attorney was with his assent. 'If a person by his conduct induces another to believe in the existence of a particular state of facts, and the other act thereon to his prejudice, the former is estopped, as against the latter, to deny that the state of facts does in truth exist:' 16 Cyc. 680, 681. 'Estoppel by silence arises where a person who by force of circumstances is under duty to speak refrains from doing so and

thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice.' His silence, which is now so earnestly relied on, was grossly misleading. The attorney could have simply handed the paper to him and complied with every legal requirement. The paper was not for the executor to keep but to pass on for record, as the attorney did, as a record memorial of the husband's declaration of intention. The mere fact that the executor did not take physical control of the paper, but was satisfied to be advised of its contents and see it when it was laid before him within line of reading. vision, with the statement that it would be placed on record, is not sufficient to defeat the statutory requirement of delivery. If his silence was intended to frustrate a completed delivery, it should receive no encouragement through emphasizing such a technicality. If his standing mute was unintentional or designed, the acts of the parties should be measured by their intention, expressed or implied."

Thus we see that while Swartz's Estate was under the Act of 1911 which omitted the highly mandatory provision, nevertheless, in reversing, the Superior Court has predicated its action on an actual delivery.

Judge Walling's remark in Minnick's Estate, 288 Pa. 354, 358, must be read in the light of the record in Swartz's Estate, and so read confirms my interpretation thereof.

This act is intended not only for the protection of the parties interested in the estate but for that of all the world who may be dealing with real estate belonging to decedents. It is highly mandatory and should not be relaxed.

The claim of the widow is dismissed.

*Edward J. McGrath, William Y. C. Anderson* and *Daniel C. Donoghue,* for exceptant.

*Robert F. Bonner* and *Kesniel C. Acton,* contra.

VAN DUSEN, J., March 18, 1932.—Within the year the guardian of the feeble-minded widow elected in writing to take against the will of the testator and duly acknowledged the same. The guardian then carried the paper to the office of the recorder of deeds and procured the same to be recorded; after this was done, the same hand carried the original paper to the files of the clerk of the orphans' court. At about the same time a copy of the election was delivered by the guardian to the executor.

The Wills Act of 1917, section 23 (b), as amended, requires that the surviving spouse shall "manifest the election by a writing signed by him or her, duly acknowledged . . . and delivered to the executor or administrator . . . within one year after the issuance of letters testamentary or of administration." Then the statute categorically provides: "Neglect or refusal or failure to deliver such writing within said period shall be deemed an election to take under the will."

In the full sense of the word the election in this case was not "delivered" to the executor. In our opinion, however, such delivery to the executor is but a means to an end, and not the end itself. The executor is further required by section 23 (e) of the statute to record the election in the office for the recording of deeds of the county where the decedent's will is probated. Then follows a curiously-worded provision: "the election . . . may also be recorded in any office for the recording of deeds within this commonwealth, with the same effect as if a duly signed and acknowledged declaration to the effect stated therein had been made by the person authorized to elect, and at his or her request recorded in said office according to law." The statute does not say that the executor must do this supplemental recording, and it is implied that the request

for the same should come from the electing spouse. The statute further requires that the election after it is recorded shall be filed in the office of the clerk of the orphans' court; but it does not say that the executor must carry the paper from one office to the other.

Before the Act of 1911 voluntary elections to take under or against a will might remain in pais. The ends which were sought to be attained by the statutes were: A definite written act by the spouse within a certain time, the placing of the same on record where documents relating to real estate titles are usually found, the permanent placing of the same in an appropriate public office, and information to the executor for his guidance in management and distribution of the estate. The originator of the system supposed that all this might be most conveniently handled through the executor. There are weaknesses in the system, however. The executor is not required to record or file the paper within a year, though it is important to searchers of title that this should be done. By neglect or fraud the executor might fail to do anything with the paper. Such neglect ought not to prejudice the electing spouse, but would at least be inconvenient for a purchaser. Even if the purchaser inquired of the executor, he might get a false answer, and would have a remedy only against what might be an irresponsible person. The statute does not provide that the person making the election must follow up the executor to see that he does his duty about recording, etc.

Indeed, there may be no executor or administrator c. t. a. Some wills devise real estate only, and there is no occasion for personal representatives. It is conceivable that an executor might die a day or so before the year was up, and that no administrator c. t. a. would or could be appointed within the year. In either case, the surviving spouse is the only person who can file the election. We refer to these imperfections argumentatively, to show that the statutory method of proceedings is not the only possible way of attaining the essentials, and perhaps not the best way. While delivery to the executor will undoubtedly be sufficient because the statute says so, there may be other means of attaining the same end.

If we believed that it was essential that the executor should handle the original paper before it was recorded or filed, we would agree that this part of the statutory directions could not be dispensed with. The auditing judge suggests that "the executor has the duty of examining the election, and if it be infirm for any reason, he can at once move to have it declared void." On the contrary, we think the executor is a stakeholder, and has no interest for or against the election. His duty is that of a messenger in conveying the paper to the appropriate offices. If, therefore, the electing spouse has herself conveyed the paper to these offices and has notified the executor of the election by giving him a copy, it is a substantial performance of the essentials.

Swartz's Estate, 72 Pa. Superior Ct. 143, is urged against our conclusion. The attorney for the electing spouse showed the original election to the executor, and then said that he would himself take it to the office of the recorder of deeds, to which the executor made no objection. It was said that this was equivalent to a delivery, and that the executor was estopped to say that it was not. It was assumed that a delivery was essential, and it was not necessary to go behind that assumption, as we have been forced to do.

Exceptions Nos. 7, 9 and 10 to the adjudication of June 10, 1931, and exceptions Nos. 10 and 11 to the adjudication of January 15, 1932, are sustained. Exception No. 11 to the adjudication of June 10, 1931, was not argued and is dismissed. The other exceptions present the claim of the widow in various aspects, with particular reference to certain matters alleged to be an adoption

588

by the executor of the acts of the guardian, or an estoppel to deny the effectiveness of such acts, along the lines of the argument in Swartz's Estate, *supra*. We prefer to rest our conclusions upon the grounds stated above, and, therefore, dismiss all the other exceptions.

HENDERSON, J., dissents.